## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VIRGILIO MARTINEZ, Individually and on Behalf of All Others Similarly Situated,**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>-against-<br><br>**COVENANT AVIATION SECURITY CORPORATION, COVENANT SECURITY SERVICES, LTD., COVENANT AVIATION SECURITY, LLC, and ROBERT L. COE, Jointly and Severally,**<br><br>　　　　　　　　　　**Defendants.** | **11-cv-4952 (BMC)** |

## ORDER GRANTING PLAINTIFFS' MOTIONS FOR CERTIFICATION OF THE SETTLEMENT CLASS; FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF THE FLSA SETTLEMENT; AND APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

This case is before me on plaintiffs' motions for certification of a settlement class; final approval of their class action settlement; final approval of their collective action settlement under the Fair Labor Standards Act ("FLSA"); and approval of their attorneys' fees and reimbursement of expenses. All motions are uncontested. For the reasons stated below, the motions are granted.

On October 12, 2011, Plaintiff Virgilio Martinez commenced this civil action against his former employers Covenant Aviation Security Corporation, Covenant Security Services, Ltd., Covenant Aviation Security, LLC (collectively, "Covenant" or, the "Corporate Defendants") and Robert L. Coe (the "Individual Defendant") to recover for unpaid regular wages and unpaid overtime wages. Martinez filed this putative class and collective action on behalf of himself and others similarly situated. After the complaint was filed, plaintiff Mark West (together with

Martinez, the "Class Representatives") filed a Consent to Become a Party in a Class Action on November 29, 2011.

The parties began engaging in settlement discussions soon after Martinez filed the original complaint. The parties engaged in numerous teleconferences and informal document production during the pendency of these settlement negotiations. In furtherance of the settlement negotiations, defendants agreed to produce to plaintiffs' counsel an analysis of their time and payroll records which demonstrated the hours worked and rates of pay for each of the putative class members.

After several teleconferences and negotiations relating to the scope of the claims and the extent of the damages for the plaintiffs and the defendants' other Tour Supervisors who worked at either LaGuardia International Airport or JFK International Airport at any time between October 12, 2005, and the present (the "settlement class"), the parties reached an agreement to settle the action (the "Initial Settlement Agreement"), pending this Court's approval on December 16, 2011.

The Court preliminarily approved the Initial Settlement Agreement and authorized notice of the proposed settlement to be sent to the settlement class. After sending the notice, class counsel received phone calls from members of the settlement class inquiring into the claims covered by the settlement, through which plaintiffs' counsel learned of additional allegations of unpaid wages arising from automatic payroll deductions for lunches. The parties agreed to conduct further discovery and investigation into these claims and consequently, to place the Initial Settlement Agreement on hold pending this investigation.

On February 3, 2012, plaintiffs' counsel mailed a Court-approved Notice Regarding Proposed Settlement, informing the settlement lass of the new allegations and the investigation of the unpaid lunch breaks. Thereafter, the parties held several joint telephone conferences with

2

members of the settlement class and eventually exchanged additional damages calculations relating to the allegation that settlement class members had not received their full lunch breaks.

After additional negotiations related to liquidated damages and further discussions with members of the settlement class regarding defendants' offer of settlement, the parties reached a revised agreement to settle this action for $600,000 (the "Revised Settlement Agreement"), pending this Court's approval, on March 1, 2012. The Court preliminarily approved the Revised Settlement Agreement on March 9, 2012, and approved mailing of the notice of settlement ("Notice") to the settlement class.

The Notice informed the class members of their preliminary settlement amount, described the manner in which this award was computed, stated class counsel's intent to seek reasonable costs as well as attorneys' fees amounting to one-third of the settlement, and informed the settlement class of their right to object to the settlement or to opt-out of the settlement. No settlement class members have exercised their right to opt-out of the settlement, and as of this date, no members of the settlement class have objected to the settlement.

Based upon an examination of the Revised Settlement Agreement; the Declaration of Brent Pelton in Support of Final Approval of the Class Action Settlement; the oral arguments presented at the April 27, 2012 fairness hearing; and the complete record in this matter, for the reasons set forth therein and stated on the record at the fairness hearing and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**Certification of the Settlement Class**

1.      The Court certifies the following class under Federal Rule of Civil Procedure 23 (e), for settlement purposes:

3

All current and former employees of Covenant Security who worked as Tour Supervisors in either LaGuardia International Airport or JFK International Airport at any time between October 12, 2005 and the present.

2.      Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3.      Plaintiffs satisfy Rule 23(a)(1) because there are approximately 42 class members and, thus, joinder is impracticable.  See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members . . . .").

4.      The proposed class also satisfies Rule 23(a)(2), the commonality requirement. All class members raise common issues: (1) whether defendants failed to pay overtime pay; and (2) whether defendants improperly deducted wages from class members' pay for lunch breaks notwithstanding the fact that class members did not always receive a full 30-minute uninterrupted break each day.  These common issues are "capable of classwide resolution." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

5.      Plaintiffs satisfy Rule 23(a)(3) – typicality – because the claims of the class members arise from the same factual and legal circumstances that form the bases of the Class Representatives' claims.  See Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997); Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 158 (S.D.N.Y. 2008).  The Class Representatives suffered the same alleged injury as did the class members – defendants' failure to pay proper overtime and improper automatic wage deductions for lunch breaks – and rely on the same legal arguments as the class.

6.      Plaintiffs satisfy Rule 23(a)(4), adequacy, because the Class Representatives' interests are not antagonistic to or at odds with those of the class members and because Plaintiffs' counsel are competent and experienced in the area of FLSA class action litigation.

4

See In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011);

Marisol A., 126 F.3d at 378.

       7.     Plaintiffs also satisfy Rule 23(b)(3). The common factual allegations – that

defendants failed to pay its employees overtime and improperly deducted wages for lunch breaks

– and a common legal theory – that defendants' policies violated New York Labor Law –

predominate over any factual or legal variations among class members. See Myers v. Hertz

Corp., 624 F.3d 537, 547 (2d Cir. 2010); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D.

363, 373 (S.D.N.Y. 2007) (the issue of whether employees were supposed to be paid overtime

was "about the most perfect question[] for class treatment").

       8.     Class adjudication of this case is "superior" to individual adjudication within the

meaning of Rule 23(b)(3) because it will conserve judicial resources and is more efficient for

class members, particularly those who lack the resources to bring their claims individually. See

Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010). The class members have limited

financial resources with which to prosecute individual actions. Furthermore, in a case such as

this, a single proceeding is far more manageable than a series of disjointed proceedings, as

adjudicating the claims in a single class action will promote uniformity of decisions and will

protect courts from wasting resources on duplicative litigation. See In re Currency Conversion

Fee Antitrust Litig., 264 F.R.D. 100, 117 (S.D.N.Y. 2010).

**Approval of the Settlement Agreement**

       9.     The Court hereby grants the motion for final approval of the settlement of New

York Labor Law claims and finally approves the settlement as set forth in the Revised Settlement

Agreement.

10. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005); D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974). See Visa U.S.A., 396 F.3d at 117. Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlements" of class action suits, and a settlement "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery" is entitled to a resumption of fairness, adequacy, and reasonableness. Id. at 116.

11. The Revised Settlement Agreement is procedurally fair, reasonable, adequate, and not a product of collusion. The settlement was reached after plaintiffs conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties.

### *Procedural Fairness*

12. Counsel for defendants conceded liability and began providing documentation regarding plaintiffs' wage claims at the very inception of this case. According to class counsel, the settlement amount was agreed upon after a review of defendants' pay and time records and other relevant documents. Plaintiffs' and defendants' counsel also interviewed current and former employees of defendants to obtain factual information as part of their investigation of the claims.

6

13.     The parties appear to have conducted arm's-length negotiations throughout the pendency of this action. They seem to have reached the settlement agreement only after extensive negotiations and exchange of informal discovery and damages calculations.

***Substantive Fairness***

14.     The Court finds that the settlement is substantively fair because all of the Grinnell factors either weigh in favor of final approval or do not weigh against final approval.

15.     The Grinnell factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Grinnell, 495 F.2d at 463.

16.     Litigation through trial would be complex, expensive, and long. Therefore, the first Grinnell factor weighs in favor of final approval.

17.     The class's reaction to the settlement was positive. The Notice included an explanation of the allocation formula and estimated each class members' award. The Notice also informed class members that they could object to or exclude themselves from the settlement, and explained how to do so. No class member objected to the Settlement, and no class member requested exclusion. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. Wright v. Stern, 553 F. Supp. 2d 337, 344-45

7

(S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted-out). The second Grinnell factor thus weighs in favor of final approval.

18.     The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004). A review of the affidavit submitted by class counsel in this case demonstrates that the parties engaged in an informal exchange of information which gave plaintiffs sufficient understanding of the merits of this case to have landed on a fair settlement amount. The third Grinnell factor thus weighs in favor of final approval.

19.     The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks," In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997), and one purpose of a settlement is to avoid the uncertainty of a trial on the merits. Here, the fact-intensive nature of plaintiffs' overtime claims presents risks since off-the-clock wages are necessarily difficult to prove at trial. This settlement eliminates those risks. The fourth and fifth Grinnell factors thus weigh in favor of final approval.

20.     The risk of maintaining class status throughout trial also weighs in favor of final approval. A contested class certification motion would likely require extensive discovery and briefing. If the Court granted a contested class certification, defendants could seek to file an appeal under Federal Rule of Civil 23(f) and could move to decertify the class, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process. The sixth Grinnell factor thus weighs in favor of final approval.

21.     This is not a case where further litigation would have placed in jeopardy the ability of plaintiffs to collect a judgment. That said, the settlement amount more than

8

compensates the class members for their alleged unpaid wages. The seventh <u>Grinnell</u> factor thus does not weigh against final approval, since the settlement amount is potentially more than the damages that can be proven at trial.

22. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" <u>Frank v. Eastman Kodak, Co.</u>, 228 F.R.D. 174, 186 (W.D.N.Y.) (quoting <u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" <u>Id.</u> (quoting <u>Newman v. Stein</u>, 464 F.2d 689, 693 (2d Cir. 1972)). In any event, the settlement amount is quite substantial and, as mentioned above, is potentially more than the damages could be proven at trial. The eighth and ninth <u>Grinnell</u> factors thus favor final approval.

**Approval of the FLSA Settlement**

23. The Court hereby approves the FLSA settlement.

24. Approval of an FLSA settlement requires a less rigorous standard than Rule 23 because due process concerns are not implicated in the same fashion. <u>See Sewell v. Bovis Lend Lease, Inc.</u>, No. 09-CV-6548, 2012 WL 1320124, *10 (S.D.N.Y. Apr. 16, 2012).

25. Courts approve FLSA settlements "so long as they are the result of contested litigation where adversarial parties reach an agreement on disputed issues." <u>Id.</u> For all of the reasons that justify approving the parties' settlement of the New York Labor Law claims, the parties' settlement of their FLSA claims should be approved as well.

9

**Approval of Attorneys' Fees and Expenses**

26.     Class Counsel did substantial work identifying, investigating, prosecuting and settling the class claims.

27.     Class counsel, Pelton & Associates, PC, are experienced employment lawyers with good reputations among the employment law bar.  They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions.

28.     The Court hereby grants plaintiffs' motion for attorneys' fees and awards Class Counsel $199,687.71 in attorneys' fees or one-third (33.33%) of the settlement amount less reimbursable costs and expenses.

29.     The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." Visa U.S.A., 396 F.3d at 122; accord Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases).  In class action wage and hour lawsuits, public policy favors an attorneys' fee award that is based on a percentage of the common fund, since the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation." Visa U.S.A., 396 F.3d at 121.

30.     Class counsel's request for one-third (33.33%) of the settlement amount is reasonable under the circumstances of this case and is "consistent with the norms of class litigation in this circuit." Gilliam v. Addicts Rehab. Ctr. Fund, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008).  Although the percentage of the attorneys' fees award should generally be inversely related to the amount of the settlement, see Frank, 228 F.R.D. at 189, courts in this Circuit have approved attorneys' fees awards of 33.33% even when

10

the settlement amount is far greater than the instant settlement. Khait v. Whirlpool Corp., No.

06-CV-6381, 2010 U.S. Dist. LEXIS 4067, *21 (E.D.N.Y. Jan. 20, 2010) (awarding class

counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case);

Stefaniak v. HSBC Bank USA, N.A., No. 05-CV-720, 2008 U.S. Dist. LEXIS 53872, *9

(W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case).

  31.  Applying the lodestar method as a "cross check," see Goldberger v. Integrated

Res. Inc., 209 F.3d 43, 50 (2d Cir. 2000), by reviewing class counsel's contemporaneous time

records, the Court finds that the multiplier that class counsel seek – approximately 2.40 times

lodestar – is reasonable.  Courts regularly award lodestar multipliers from 2 to 6 times lodestar.

See, e.g., In re Lloyd's Am. Trust Fund Litig., 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at

*78-79 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of

multipliers awarded by courts within the Second Circuit").

  32.  The Court also awards class counsel reimbursement of their litigation expenses in

the amount of $963.26.  Courts typically allow counsel to recover their reasonable out-of-pocket

expenses.  See In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183

n.3 (S.D.N.Y. 2003).  Here, class counsel's unreimbursed expenses – complaint filing fees,

process serving fees, telephone charges, postage, photocopies, and electronic research – are

reasonable and were incidental and necessary to the representation of the Class.

  33.  The attorneys' fees awarded and the amount in reimbursement of litigation costs

and expenses shall be paid from the settlement fund.

  34.  The "Effective Date" of the settlement shall be 30 days after the date of this Order

if no party appeals this Order.  If a party appeals this Order, the "Effective Date" of the

settlement shall be the day after all appeals are finally resolved.

35.     Within 5 days of the Effective Date, the defendants will distribute the settlement amount by making the following payments:

    a.  Paying class counsel one-third of the settlement fund;

    b.  Reimbursing class counsel for $963.26 in litigation costs and expenses;

    c.  Paying the remainder of the settlement fund to class members in accordance with the allocation plan described in the Revised Settlement Agreement.

36.     The Court retains jurisdiction over this action for the purpose of enforcing the Revised Settlement Agreement and overseeing distribution of the settlement fund.  The parties shall abide by all terms of the Revised Settlement Agreement and this Order.

37.     The Clerk of the Court is directed to close this case without further order of this Court fifteen days after entry of this Order.


**SO ORDERED.**

s/ BMC

U.S.D.J.

Dated: Brooklyn, New York
      April 27, 2012

12